UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                  Plaintiff,

    -v.-                                                                             1:06-CR-411
                                                                                             (LEK)

RAYMOND VANHOESEN, a/k/a SHAM, and
JERMAINE VANHOESON a/k/a WALEEK
                                  Defendants.
_____

## MEMORANDUM-DECISION AND ORDER[1]

      Presently before the Court are: (1) a Motion for a Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure from the jury verdict rendered on May 30, 2008, filed by Defendant Raymond VanHoesen on June 1, 2008 (Dkt. No. 121), (2) a Motion for an Order, pursuant to Fed. R. Crim. P. Rule 33, vacating any judgment arising from the jury verdict rendered on May 30, 2008 and granting a new trial, filed by Defendant Raymond VanHoesen on June 1, 2008 (Dkt. No. 122), and (3) a Motion for an Order, pursuant to Fed. R. Crim. P. Rule 33, vacating any judgment arising from the jury verdict rendered on May 30, 2008 and granting a new trial, filed by Defendant Jermaine VanHoesen on June 6, 2008 (Dkt. No. 127). The Government filed its opposition to these Motions on September 12, 2008. Dkt. No. 132.

**I.    Legal standard**

      Fed. R. Crim. Proc. 29 imposes a heavy burden on the Defendants, whose convictions must be affirmed if "'after viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[1] For printed publication by the Federal Reporters.

doubt.'" United States v. MacPherson, 424 F.3d 183, 187 (2d Cir. 2005) (quoting Jackson v. Virginia, 443 U.S. at 319) (emphasis in original).  In assessing the sufficiency of the evidence, the Court must view the evidence in its totality and in the light most favorable to the prosecution, mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court.  See United States v. Salmonese, 352 F.3d 608, 618 (2d Cir.2003).  A court may therefore grant a judgment of acquittal only if it is convinced that "the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt."  United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotation marks omitted).

Fed. R. Crim. P. 33(a) provides, in pertinent part: "Upon the defendant's motion, the court may . . . grant a new trial if the interest of justice so requires."  As the Court noted in United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001), this rule "gives the trial court 'broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.'"  Ferguson, 246 F.3d at 133 (citations omitted); see also United States v. Autuori, 212 F.3d 105, 120 (2d Cir. 2000).  In ruling upon a Rule 33 motion, a district court "must examine the entire case, take into account all facts and circumstances, and make an objective assessment."  Ferguson, 246 F.3d at 134.  However, the authority to grant a Rule 33 motion must be exercised "sparingly" and only in the most "exceptional circumstances."  Id.; see also, U.S. v. Canova, 412 F. 3d 331, 348 (2nd Cir. 2005) ("The 'ultimate test' is 'whether letting a guilty verdict stand would be a manifest injustice . . . . There must be a real concern that an innocent person may have been convicted.'") (internal citations omitted).

**II.     Discussion**

On May 30, 2008, the jury in this case returned a verdict finding Defendant Jermaine VanHoesen ("JVH") guilty of Count 3: possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and the amount of cocaine base that he possessed with the intent to distribute was at least 5 grams but less than 50 grams. The jury found Defendant Raymond VanHoesen ("RVH") guilty of Count 2: possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and the amount that he possessed with the intent to distribute was at least 5 grams but less than 50 grams. See Dkt. No. 120; Indictment (Dkt. No. 12).

### A.   Required elements

To convict the Defendants, the Government was required to prove beyond a reasonable doubt the following elements: (1) the Defendants possessed the controlled substance described in the indictment; (2) the Defendants possessed the controlled substance with the intent to distribute it; and (3) the Defendants did so knowingly and willfully.

In assessing whether the Government met their burden on the first element, there is no requirement that the defendant be observed in physical contact with narcotics in order to be convicted of its possession. Rather, the possession of narcotics may be either actual or constructive. United States v. Torres, 901 F.2d 205, 221 (2nd Cir. 1990), *cert. denied*, 489 U.S. 906 (1990); United States v. Aiello, 864 F.2d 257, 263 (2d Cir. 1988). Constructive possession exists when a person "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Pelusio, 725 F.2d 161, 167 (2d Cir. 1983) (quotation omitted); see also, United States v. Hastings, No.90-1137, slip op. at 7280 (2nd Cir. Nov. 9, 1990).

"[I]ntent to distribute may be proven by either direct or circumstantial evidence and may be inferred from such things as the possession of a large quantity of a controlled substance." United States v. Shurn, 849 F.2d 1090, 1093 (8th Cir. 1988); United States v. Castellanos, 731 F.2d 979 (2d Cir. 1984).  Intent to distribute may be proven by expert testimony.  See United States v. Pugliese, 712 F.2d 1574 (2d Cir. 1983).  This may include evidence of the composition, quantity, quality, and value of the controlled substance.  Id.; Castellanos, 731 F.2d 979.

B.    **Evidence offered at trial**[2]

   1.    **Jermaine VanHoesen**

The Government presented Albany Police Detective Sergeant Jeffrey Roberts, who testified to setting up a "rip" operation with a confidential informant, Reno Conley, to purchase cocaine from JVH on February 20, 2003.  Calls were placed to a beeper and cell phone that witnesses testified was JVH's, and JVH arrived at the pre-arranged meet location.  Roberts described JVH's driving away from the scene upon seeing the police officers, the ensuing police chase, and the recovery of evidence from the chase route, and from JVH's vehicle and person.  The recovered evidence included cocaine.  Exhibits included photographs of the scene, tape recordings of the phone conversations, transcripts of the conversations, cell phones, phone records and call charts.  See Dkt. No. 107.  Reno Conley, the confidential informant, testified regarding the same events involving JVH, as well as a prior history of crack purchases from JVH and RVH.  Id.

The Government then presented two forensic scientists, Brian Scott Meinweiser and Jamie L. Murphy, who testified to the contents of previously admitted evidence.  Both witnesses, based on

---

[2] The evidence that was presented at the trial is viewed in the light most favorable to the prosecution.  See United States v. Salmonese, 352 F.3d 608, 618 (2d Cir.2003).

prior testing and analysis, as well as their training and expertise, testified that the samples recovered from the rip operation contained cocaine.  Dkt. No. 108.  Albany Police Officer John Crossman described his involvement in the "rip" operation on February 20, 2003, described the chase route using photograph exhibits, and testified to crack cocaine that he found along the chase route.  Id. Albany Police Detective Jeffrey Connery also testified regarding a bag of crack cocaine that he found on February 20, 2003.  Exhibits were admitted including, inter alia, photographs of the crack and an evidence bag containing the crack cocaine.  Dkt. No. 109.

The Government also presented Albany Police Detective John Monte, a detective with 17 years experience.  He testified regarding his involvement in the rip operation on February 20, 2003 and identified evidence seized from JVH's car and person, including papers identified as belonging to JVH, as well as photographs showing the location that the evidence was found, and a list of calls made from a cell phone.  Dkt. No. 109.

Albany Police Detective Ricky Vincent, with 18 years experience, testified regarding his involvement in the rip operation on February 20, 2003.  Dkt. No. 116.  He outlined the rip operation, testified that he was familiar with JVH and identified him at the meet location, described the car chase and testified that he saw JVH throw a white substance out of the vehicle along the chase route.  Vincent also identified exhibits including drugs and photographs.  Id.  Additional Albany Police Detectives testified regarding custody of the evidence: Scott Gottesman, Michael Haggerty, and John A. Reilly, Jr.  Dkt. No. 109.

   2.   **Raymond VanHoesen**

The Government called Albany Police Detective Scott Gavigan, who had 16 years experience with the police department, to testify regarding the search of RVH's basement apartment

at 81 Ten Broeck Street. Gavigan testified to finding crack, marijuana, a scale, and other drug paraphernalia, and identified (i) the evidence seized, including a fur coat, a duffle bag, and a shoe box, (ii) documents seized from the apartment, including pay stubs, a lease agreement, receipts, and a photograph of RVH, and (iii) photographs involving the apartment. Dkt. Nos. 109, 115. All exhibits were admitted into evidence. Id. The Government also presented Pat Regan, RVH's landlord at 81 Ten Broeck Street, who confirmed that the apartment was leased to RVH.

The Government then called Theresa AnnMarino, a Senior Court Reporter for the New York State Court System. Dkt. No. 115. AnnMarino read from an excerpt of plea proceedings involving RVH which related to a separate charge but involved the same evidence. The testimony was directly relevant to the intent element in the current charge. Id.

Next, the Government called several witnesses who testified regarding prior drug sales and purchases involving RVH. These witnesses included Vernon Murphy, Maurice Tucker (Dkt. No. 115), Lauren Manning, Michael Clark, and Shantay Anthony (Dkt. No. 116). Special Agent Terrence Dunlap of the Drug Enforcement Administration ("DEA") testified regarding, *inter alia*, the crack seized from RVH's 81 Ten Broeck Street apartment.

**C.     Review of the evidence**

Viewing the evidence in its totality and in the light most favorable to the prosecution, the Court is not convinced that evidence of guilt "is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. Guadagna, 183 F.3d at 130. Accordingly, relief pursuant to Fed. R. Crim. P. Rule 29 is denied. The Court also does not find "a real concern that an innocent person may have been convicted" as needed to find manifest injustice and grant relief under Fed. R. Crim. P. Rule 33(a). U.S. v. Canova, 412 F. 3d at 348.

The Defendants have not demonstrated that the Government failed to prove the elements of the charged offenses or that manifest injustice has occurred. The government produced numerous witnesses and exhibits to support the elements of the counts of conviction and, based upon this evidence, the verdicts should stand.

### III.    Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant Raymond VanHoesen's Rule 29 Motion (dkt. No. 121) is **DENIED**; and it is further;

**ORDERED**, that Defendant Raymond VanHoesen's Rule 33 Motion (Dkt. No. 122) is **DENIED**; and it is further;

**ORDERED**, that Defendant Jermaine VanHoesen's Rule 33 Motion (Dkt. No. 127) is **DENIED**; and it is further;

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:    September 24, 2008
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge